UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LEONARD THOMAS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:15-CV-548-JVB-JEM |
| ) | |
| CORIZON HEALTH INC., *et al.*, ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Joint Motion for Summary Judgment [DE 116] filed on October 12, 2021. Plaintiff filed a response on January 7, 2022. Defendants filed a reply on February 4, 2022.[1]

## PROCEDURAL HISTORY

### Case Number 3:15-CV-548

Plaintiff Leonard Thomas filed a pro se complaint on November 20, 2015, which was assigned case number 3:15-CV-548. The Court struck that complaint and granted leave to amend the complaint, which Plaintiff did on January 22, 2016. Plaintiff also requested the assistance of counsel, which the Court denied on February 1, 2016. The amended complaint was also stricken, and a second amended complaint was filed, with leave of Court, on March 4, 2016. The second amended complaint was stricken on October 12, 2016. On July 7, 2017, this case was dismissed as abandoned.

On March 27, 2020, the Seventh Circuit Court of Appeals reversed this Court's decision to not appoint counsel for Plaintiff, reinstated Plaintiff's case, and returned the matter to this Court

---

[1] The reply is attached to Defendants' motion for leave to file an oversized reply brief, which the Court granted on February 8, 2022. Though instructed to file the reply brief separately on the docket by February 11, 2022, Defendants failed to do so. Regardless, in the interest of justice, the Court will consider the reply brief.

for further proceedings. Once back in district court, Plaintiff received appointed counsel, who filed a third amended complaint on October 6, 2020. This is the operative complaint from this case and alleges two counts of 42 U.S.C. § 1983 violations in the form of cruel and unusual punishment prohibited by the Eighth Amendment and one count of state law *respondeat superior*. On April 19, 2021, the Court denied a motion to dismiss the third amended complaint.

### Case Number 3:18-CV-803

Plaintiff filed another pro se complaint on September 28, 2018, which was assigned case number 3:18-CV-803. The Court screened the complaint and allowed three claims to proceed: a First Amendment retaliation claim and two Eighth Amendment claims of deliberate indifference to serious medical needs. These claims survived a motion to dismiss.

Plaintiff requested the appointment of counsel multiple times, and the Court denied several of these requests before ultimately recruiting counsel for Plaintiff in May 2020. Counsel filed an amended complaint on May 5, 2021, alleging two counts of denial of adequate medical care, and two counts of violation of the First Amendment through retaliatory actions.

### Consolidation

On May 13, 2021, the Court granted an unopposed motion to consolidate the -548 case and the -803 case, and the -803 case was reassigned to the undersigned. In this now-consolidated case, Plaintiff brings claims under 42 U.S.C. § 1983 alleging the following:

1. Defendant Corizon Health, Inc. violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment by having policies, customs, or practices that were intentionally designed to deliberately deny adequate treatment to seriously mentally ill individuals held in custody while he was incarcerated at Westville Correctional Facility ("Westville") from March 26, 2014, to June 25, 2015, (3d Am. Compl. ¶¶ 97-107, ECF No. 48);

2. Defendants Eichman, Wardell, Mazick, Barnes, Basinger, Pazera, Pavese, and Hendrix violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment by being deliberately indifferent to Plaintiff's medical needs while he was incarcerated at Westville from March 26, 2014, to June 25, 2015, *id.* at ¶¶ 121-130;

3. Defendants Hendrix, Sevier, Leohr, Brown, Raney, Walters, Newkirk, Thode, Osborn, Eichmeier, Evans, Byrd, Burdine, Sims, Roden, Nance, Misetic, and Axsom violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment by being deliberately indifferent to Plaintiff's medical needs while he was incarcerated at Wabash Valley Correctional Facility ("Wabash") from June 26, 2015, to January 29, 2016, (*Thomas v. Hendrix*, No. 3:18-cv-803, 2d Am. Compl. ¶¶ 97-108, ECF No. 133);

4. Defendants Hendrix, Sevier, Leohr, Brown, Walters, Raney, Newkirk, Thode, Osborn, Eichmeier, Evans, Byrd, Burdine, Sims, Roden, Nance, Misetic, and Axsom acted unconstitutionally by denying adequate medical care and causing Plaintiff to be transferred in retaliation against Plaintiff for engaging in activity protected by First Amendment while he was incarcerated at Wabash from June 26, 2015, to January 29, 2016, *id.* at ¶¶ 109-119;

5. Defendants Sevier, Pazera, Newkirk, Evans, Miller, Thode, Eichmann, Mazick, Taylor, Shihadeh, Liaw, Hutchison, and Bigheart violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment by failing to provide Plaintiff with adequate mental health care while he was incarcerated at Westville from January 29, 2016, to April 20, 2016, *id.* at ¶¶ 120-131; and

6. Defendants Sevier, Pazera, Newkirk, Evans, Miller, Thode, Eichmann, Mazick, Taylor, Shihadeh, Liaw, Hutchison, and Bigheart acted unconstitutionally by denying adequate medical care and causing Plaintiff to be confined to his cell for at least 23 hours per day in retaliation against Plaintiff for engaging in activity protected by First Amendment while he was incarcerated at Westville from January 29, 2016, to April 20, 2016, *id.* at ¶¶ 132-142.

Plaintiff also brings a claim of state law *respondeat superior* alleging that Corizon Health is responsible for the actions of its employees performed within the scope of their employment and acquiesced in the provision of inadequate medical care to Plaintiff during his first period of incarceration at Westville. (3d Am. Compl. ¶¶ 108-120, ECF No. 48).

Defendants filed their motion for summary judgment on October 12, 2021.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish

3

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

## MATERIAL FACTS

### Plaintiff's Relevant Incarceration

Plaintiff's claims against Defendants relate to alleged inadequate mental health care and retaliation during his incarceration at two different Indiana Department of Correction (IDOC) facilities—Westville and Wabash. Plaintiff was housed within these IDOC facilities as follows:

1. Westville from March 26, 2014, to June 25, 2015, where he was placed on Administrative Restrictive Status Housing status, (Defs.' Ex. A, ¶¶ 21-22, ECF No. 118-1);

2. Wabash from June 26, 2015, to January 29, 2016, where he was placed in the Special Needs Unit (Defs.' Ex. B, ¶ 13, ECF No. 118-1);

3. Westville from January 29, 2016, to April 20, 2016, where he was placed on Administrative Restrictive Status Housing status, (Defs.' Ex. A, ¶¶ 21-22, ECF No. 118-1); and

4. Westville from January 17, 2017,[2] to at least 2019 where he remained on Administrative Restrictive Status Housing status, *id.*

### IDOC Grievance Process

During all times relevant to his complaint, Plaintiff was incarcerated with IDOC at Westville and Wabash. As a person incarcerated with IDOC, the Offender Grievance Process is made available to Plaintiff. (Defs.' Ex. A, ¶ 7, ECF No. 118-1). Per the policy, a person is advised of the policy during the orientation that occurs when entering IDOC and when transferred to a facility. (Defs.' Ex. C, § VII, ECF No. 118-3). A copy of the process is available in IDOC law libraries. (Defs.' Ex A. ¶ 7, ECF No. 118-1). The purpose of the Offender Grievance Process is to provide administrative means by which people who are incarcerated may resolve concerns and complaints related to their conditions of confinement. *Id.*

Under the applicable procedures of the IDOC Offender Grievance Process, a person in IDOC custody can grieve actions of individual staff, including claims that medical staff were deliberately indifferent to their mental health needs or retaliated against them. (Defs' Ex. A, ¶ 8, ECF No. 118-1; Defs.' Ex. C, § IV(A), ECF No. 118-3). The Offender Grievance Process consists of three steps. (Defs.' Ex. C, § IV, ECF No. 118-3). A person using the process has not fully utilized or exhausted the Offender Grievance Process until they timely complete all steps of the

---

[2] Plaintiff was housed at New Castle Correctional Facility from April 20, 2016 to January 17, 2017. (Defs.' Ex. D, ECF No. 118-4).

5

process and receive a response from the Offender Grievance Manager or the time for response elapses. (Defs.' Ex. A, ¶ 17, ECF No. 118-1). Exhaustion of the grievance procedure requires that the complainant meet all applicable time limits. *Id.*

The Offender Grievance Process begins with the informal resolution process. *Id.* at ¶ 9. Before filing a grievance, an incarcerated person is required to attempt to resolve a complaint informally and provide evidence. *Id.* State Form 52897, "Offender Complaint – Informal Process Level," is used at this level. (Defs.' Ex. C., § X.A., ECF No. 118-3). The attempted resolution of the problem or complaint must occur within five business days after receiving the State Form 52897. *Id.* at § X.B. There should be no instance where the time period is over ten business days in returning State Form 52897 to the facility Offender Grievance Specialist unless reasonable explanation is provided for the delay. (Defs.' Ex. A, ¶ 9, ECF No. 118-1).

After attempted informal resolution, the next step is submission of a completed State Form 45471, "Offender Grievance," no later than twenty business days from the date of the incident giving rise to the complaint or concern to the Grievance Specialist. *Id.* at ¶¶ 10-12. The grievance is screened by the Grievance Specialist to determine whether the submitted grievance meets the requirements for a formal grievance as set forth in the IDOC grievance policy. *Id.* If it is determined that the grievance does not meet the requirements of the policy, the grievance is returned to the complainant along with State Form 45475, "Return of Grievance." *Id.* If an adequate grievance form is received, the Grievance Specialist enters the grievance, assigns the grievance a case number, and provides a receipt for the grievance to the complainant. *Id.* The Grievance Specialist may accept a late or nonconforming grievance if a complainant demonstrates good cause. *Id.* at ¶ 12.

Third, if the complainant is dissatisfied with the grievance response after receiving notification of the response, they may note their dissatisfaction on the Formal Grievance Form and document with the Grievance Specialist that they want to proceed to the next level, which is appeal to the Department Grievance Manager. *Id.* at ¶ 13. If the complainant wishes to submit additional information in the formal grievance, they have five business days from the date of the notification of the formal grievance response to submit the additional information to the Grievance Specialist. *Id.* If the additional information is not received within five business days, the Grievance Specialist submits the formal grievance with response to the Department Grievance Manager. *Id.*

In the alternative, if the complainant receives no grievance response within twenty business days of being investigated by the facility Grievance Specialist, the complainant may appeal as though the grievance had been denied. *Id.*

The decision of the Department Grievance Manager is final. ¶ *Id.* at 14. Once the response is completed, it is returned to the Grievance Specialist electronically who provides the response to the complainant. *Id.*

Grievances forms are generally available to people who are incarcerated at Westville and Wabash via written request to the unit team (Wabash) or Grievance Specialist (Westville). (Defs.' Ex. A, ¶ 15, ECF No. 118-1; Defs.' Ex. B, ¶ 7, ECF No. 118-2). The complainant should complete a Request for Interview Form and deposit it into the inter-prison mail system to either the unit team (Wabash) or the Grievance Specialist or law library (Westville). (Defs.' Ex. A, ¶ 15, ECF No. 118-1; Defs.' Ex. B, ¶ 7, ECF No. 118-2). The requested grievance form is then provided to the complainant via hand-delivery or via the inter-prison mail system. (Defs.' Ex. A, ¶ 15, ECF No. 118-1; Defs.' Ex. B, ¶ 7, ECF No. 118-2). Formal grievances submitted by complainants, and the

responses from the Grievance Specialist, are sent and received using the inter-prison mail system. (Defs.' Ex. A, ¶ 16, ECF No. 118-1; Defs.' Ex. B, ¶ 8, ECF No. 118-2).

The records maintained by IDOC, Wabash, and Westville document whether an incarcerated person attempted an informal grievance and filed a grievance or grievance appeal; IDOC records also document when a grievance was filed, the response the complainant received from the facility, how far through the grievance process the complainant pursued their claims, and the ultimate resolution of the grievance. (Defs.' Ex. A, ¶ 18, ECF No. 118-1; Defs.' Ex. B, ¶ 10, ECF No. 118-2). When there has been delay in responding to a request for informal resolution, a formal grievance, or an appeal that goes beyond the second twenty business days, the result is that the complaint, the grievance, or the appeal is deemed to have been denied and the complainant is permitted to proceed to the next step of the grievance process, if any step remains. (Defs.' Ex. A, ¶ 19, ECF No. 118-1). If no step remains, all remedies at the Department level have been exhausted. *Id.*

John Harvil, who is the Grievance Specialist at Westville, declares the following in his affidavit:

> As an inmate incarcerated with the Indiana DOC, the Offender Grievance Process is made available to Plaintiff Leonard Thomas. The purpose of the Offender Grievance Process is to provide an administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement. The Admission & Orientation Documentation given to all offenders entering the facility includes documentation of the Offender Grievance process. It includes a detailed description of how each step is completed. A copy of the Offender Grievance Policy is also available at all times in the law libraries.

(Defs.' Ex. A, ¶ 7, ECF No. 118-1).

Plaintiff also submitted an affidavit, and he says the following: "I never received copies of the Offender Grievance Policy or the Classification Policy upon my admission to WCU [Westville] and was never instructed on how to navigate the process." (Pl.'s Aff., ¶ 6, ECF No. 127-1).

**Plaintiff's May 2014 Complaint**

Plaintiff filed an informal grievance in May 2014, complaining of inadequate housing, policies, programs, privileges, clinical and psychotropic medication, and medical treatment. (Defs.' Ex. G, ECF No. 118-7). On May 20, 2014, Case Manager Barnes wrote to Plaintiff regarding his "complaint on placement at WCU," and did not address Plaintiff's concerns regarding medical treatment or mental health care. (Pl.'s Ex. D, ECF No. 127-6). Plaintiff declares in his affidavit that Barnes's response led Plaintiff to believe that he needed to pursue the entirety of his May 2014 complaint through the classification process. (Pl. Aff. ¶¶ 4-5, ECF No. 127-1); *see also* (Defs.' Ex. C § IV.B.5 (listing classification actions and decisions as a non-grievable issue for which the classification appeals process is in place)).

As a result, Plaintiff declares that he stopped pursuing his complaint through the grievance process and pursued it instead through the classification process, which he pursued through written appeal. (Pl. Aff. ¶ 5, ECF No. 127-1). He filed a classification appeal on May 20, 2014, the same day Barnes's note to Plaintiff is dated. (Defs.' Ex. H, at 2, ECF No. 118-8).

Plaintiff was informed on September 8, 2014, that his appeal had been reviewed and that DWRH-A placements must be appealed directly to the Deputy Commissioner of Operations, so his appeal was denied. (Defs.' Ex. L, at 4, ECF No. 118-12). On February 26, 2015, Director of Classification Hendrix acknowledged that there were "several concerns in [Plaintiff's] appeal and in the many attachments," found that the crux of Plaintiff's complaint was his placement in the IDOC Department-Wide Administrative area at Westville, and denied Plaintiff's classification appeal. (Defs.' Ex. H, at 10, ECF No. 118-8). Hendrix also encouraged Plaintiff to contact the Westville unit team staff as to any concerns regarding specific services or daily needs, indicating that they "will meet with you, discuss your concerns and work with you on a proactive level." *Id.*

**Plaintiff's IDOC History of Formal Grievances and Appeals**

IDOC's record of Plaintiff's grievances show that he filed a formal grievance that was received on September 30, 2009; a formal grievance that was received on March 18, 2010, which was followed up with a formal appeal that was received on March 25, 2010; and then no further formal grievance was received until April 19, 2017. (Defs.' Ex. E, ECF No. 118-5).

## ANALYSIS

Defendants assert that summary judgment should be entered in their favor because Plaintiff's § 1983 claims are precluded by the Prison Litigation Reform Act (PLRA), because Plaintiff failed to exhaust his administrative remedies, and because the claims from the -803 case are barred by the statute of limitations.

### A. Exhaustion of Administrative Remedies

Defendants first argue that Plaintiff's claims are precluded because he failed to exhaust his administrative remedies. IDOC's process requires a complainant to complete three steps: informal grievance, formal grievance, and grievance appeal. There are applicable time limits as well. The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Strict compliance with the administrative remedy procedure is required. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). Failure to exhaust is an affirmative defense, so Defendants bear the burden of showing that Plaintiff did not exhaust his available administrative remedies. *See Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022) (citing *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006)).

Defendants further assert that Plaintiff did not provide any good cause or explanation for his delay in complying with the grievance process. Accordingly, Defendants assert that Plaintiff's failure to exhaust his administrative remedies through the grievance process mandates dismissal of his claims.

Plaintiff acknowledges that he did not complete the grievance process for the claims at issue in this lawsuit. He argues that he should nonetheless be permitted to proceed on these claims because the grievance process was unavailable to him.

1. Availability of Grievance Process in General

John Harvil, Westville's Grievance Specialist, declares in his affidavit that the grievance process was made available to Plaintiff. He specifies that the Admission & Orientation Documentation, which is given to all who are entering the facility for incarceration, includes documentation on the grievance process and also includes a detailed description of how each step is completed. Harvil declared that a copy of the policy is always available in the law libraries.

In contrast, Plaintiff declares in his affidavit that he did not receive a copy of the Offender Grievance Policy upon admission to Westville and that he was never instructed on how to navigate the process. Plaintiff does not contest or directly contradict Harvil's statements that Plaintiff was provided documentation on the process and that a copy of the policy was available in the law libraries.

Regarding Harvil's statement that a "detailed description" of how each step of the policy is completed and Plaintiff's statement that he was not instructed on how to navigate the process, it is debatable whether these statements are contradictory or whether there is enough of a difference between a description and an instruction for both statements to be true. But, the Court finds any question of fact here to be immaterial. Even assuming that the statements are contradictory,

11

accepting Plaintiff's lack-of-instruction statement as true, and rejecting Harvil's detailed-description statement, the Court finds that the policy was available to Plaintiff.

It is uncontested that the orientation documentation made Plaintiff aware of the policy by providing documentation about the policy (though not instruction or description on how to complete each step), and the policy was available in the law library (though Plaintiff was not given a copy of the policy). Plaintiff does not contend that the policy was so obtuse or opaque that he was unable to decipher how to follow the policy. In general, the grievance process was available to Plaintiff.

2. Availability Regarding May 2014 Informal Grievance

For the period from March 26, 2014, through June 25, 2015, IDOC's records show that Plaintiff did not file a formal grievance or grievance appeal regarding mental health care (or, in fact, regarding any matter). Plaintiff did file an informal grievance in May 2014. Plaintiff asserts that Defendants made the grievance policy unavailable to him for this specific grievance.

Exhaustion of administrative remedies is only required where the remedy is "available in fact and not merely in form." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). "[I]f prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it," then the grievance process is considered unavailable to that person and that administrative remedy need not be exhausted. *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011).

Plaintiff's May 2014 informal grievance complained of inadequate housing, policies, programs, privileges, clinical and psychotropic medication, and medical treatment. On May 20, 2014, Case Manager Barnes wrote to Plaintiff regarding his "complaint on placement at WCU," and did not address Plaintiff's concerns regarding medical treatment or mental health care. Plaintiff

declares in his affidavit that Barnes's response led Plaintiff to believe that he needed to pursue the entirety of his May 2014 complaint through the classification process. As a result, Plaintiff stopped pursuing his complaint through the grievance process and pursued it instead through the classification process, which he pursued through written appeal on May 20, 2014.[3]

Plaintiff was informed on September 8, 2014, that his appeal had been reviewed and that DWRH-A placements must be appealed directly to the Deputy Commissioner of Operations, so his appeal was denied. On February 26, 2015, Director of Classification Hendrix acknowledged "several concerns in [Plaintiff's] appeal and in the many attachments," found that the crux of Plaintiff's complaint was his placement in the IDOC Department-Wide Administrative area at Westville, and denied Plaintiff's classification appeal. Hendrix also encouraged Plaintiff to contact the Westville unit team staff as to any concerns regarding specific services or daily needs, indicating that they "will meet with you, discuss your concerns and work with you on a proactive level."

Plaintiff contends that the above responses of IDOC employees show that the grievance process was made unavailable to him.

In *Williams v. Strout*, No. 1:17-CV-3520, 2018 WL 4334877 (S.D. Ind. Sept. 11, 2018), the plaintiff was incorrectly told that his issue was not grievable, a misrepresentation that made the grievance process unavailable to him. In *Willburn v. Indiana*, No. 3:17-CV-59, 2018 WL 748990 (N.D. Ind. Jan. 22, 2018) (magistrate judge's report and recommendation), the defendants were not entitled to summary judgment on the issue of exhaustion regarding the grievance process where there was a question of fact whether prison staff misdirected the plaintiff to the disciplinary appeal process instead.

---

[3] Defendants cite this classification appeal as evidence that Plaintiff had access to IDOC forms and the capacity to fill them out.

Here, though, Plaintiff was not directed by any prison administrator to use the classification appeal process instead of the grievance process.[4] He was informed, regarding his complaint about his placement at Westville, that he had been approved for his current placement. He was not instructed to pursue his entire informal grievance through the classification process. Barnes did not state that he was responding to all matters stated on Plaintiff's informal grievance. Instead, at most, due to Barnes's response, Plaintiff subjectively believed he needed to use the classification process.

The PLRA contains no exception to the exhaustion requirement in instances "in which a prisoner makes a reasonable mistake about the meaning of a prison's grievance procedures." *Ross v. Blake*, 578 U.S. 632, 641 (2016). Instead, the grievance procedure is only determined to be unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. "When an administrative process is susceptible of multiple reasonable interpretations . . . the inmate should err on the side of exhaustion." *Id.* Barnes's response did not thwart Plaintiff from using the grievance process or take any affirmative step in encouraging Plaintiff to use the classification process for his medical treatment and mental health concerns. Instead, it was Plaintiff's reasonable misinterpretation of Barnes's response that caused Plaintiff to pursue his complaint through the classification process.

Even if the Court assumes (which is does not) that Plaintiff's misinterpretation of Barnes's response was sufficient to question whether Plaintiff had been misdirected, later communication

---

[4] In his affidavit, Plaintiff asserts that Barnes's response "informed me . . . that my informal complaint involved housing classification issues, directing me to the [IDOC] Offender Classification Process." (Pl. Aff. ¶ 4, ECF No. 127-1). However, the response itself does not direct Plaintiff to use that process. (Pl.'s Ex. D., ECF No. 127-6). In other words, the carefully worded paragraph from the affidavit is saying that the statement in the response was that the informal complaint involved housing classification issues. This statement, then, was interpreted by Plaintiff as requiring the classification process instead of the grievance process. It was *Plaintiff's interpretation* of the statement that directed Plaintiff to the classification process and not the response itself.

put any ambiguity to rest. On March 3, 2015, Classification Analyst Pavese explicitly informed Plaintiff:

> As for your concerns as to the policies/procedures, programs, Health Care treatment, etc., that you mentioned in your letter and appeal, these issues cannot be addressed in a Classification Appeal. Please review the Adult Offender Classification procedures to determine what can be appealed through the Classification Appeal process.

Thus, Plaintiff received notice that the classification process was the improper avenue through which to pursue this relief, but he still did not file a formal grievance regarding these concerns.

Thus, regarding Plaintiff's claims based on actions from March 26, 2014, through June 25, 2015, Plaintiff did not exhaust his administrative remedies as evidenced by the lack of formal grievance or grievance appeal filed during that time, and Plaintiff's argument that the process was made unavailable to him fails. Plaintiff failed to exhaust his administrative remedies as to these claims.

### 2. Availability Regarding Other Grievances

In the introductory section of his response brief, Plaintiff states

> The record also reflects that the grievance process was unavailable to Mr. Thomas when he did file numerous informal grievances but they were later unaccounted for; when he was, at times, denied access to grievance forms; and finally when a grievance was accepted in March 2016, the Defendants acknowledged his informal grievance but declined it asserting that the grievance was a classification issue, ignoring Mr. Thomas' requests for adequate mental health treatment, adequate medical treatment and monetary damages.

(Pl.'s Resp. 1-2, ECF No. 127). These statements are not supported by arguments or evidence later in the brief. "[I]t is not the role of the court to search the record to find support for a party's assertion." *Williams v. Bd. of Educ. Of City of Chi.*, 982 F.3d 495, 510 (7th Cir. 2020). With no evidence or argument presented on these matters, they are insufficient to withstand summary judgment.

**B. Waiver of Exhaustion Defense**

Plaintiff argues that Defendants waived their affirmative defense of failure to exhaust as to the claims that originated in the -803 case because Defendants waived that defense in filings made in the -803 case on October 21, 2019, and October 23, 2019. Defendants counter that they waived the defense as to a former, now-superseded complaint and that the filing of an amended complaint on May 5, 2021, revived their ability to assert the defense.

Defendants support their argument with *Massey v. Helman*, where the defendants were permitted to assert an exhaustion defense in their answers to the third and fourth amended complaints even though no such defense was asserted in the answers to the first and second amended complaint. 196 F.3d 727, 735 (7th Cir. 1999). It is true that in *Massey* there was no affirmative waiver of the defense as there is in this case, but the Court finds that difference to be immaterial. Just as it would contravene justice to "enable plaintiffs to change their theory of the case while simultaneously locking defendants into their original pleading," *id.*, it remains true that it would be unfair to allow a plaintiff to skirt an affirmative defense by obtaining a waiver of the defense under one set of allegations and then changing to another set of allegations that would otherwise be susceptible to challenge under the affirmative defense.

In the former complaint, Plaintiff alleged that he was prevented from accessing the grievance process, specifically, "[e]ach time I requested respectfully for staff to help file a grievance, I was denied." (*Thomas v. Leonard*, 3:15-CV-803, ECF No. 5-2 at § 11.B.). Plaintiff's 2021 amended complaint removed this allegation, instead alleging that he exhausted his available administrative remedies. (*Thomas v. Leonard*, 3:15-CV-803, ECF No. 133 ¶ 31). Defendants' answers to the amended complaint (which was filed after consolidation in the -548 case) reasserted the affirmative defense of failure to exhaust. (DE 103 p. 46; DE 104 p. 41). Defendants' waiver of

16

the exhaustion defense occurred while denial of access to the process was alleged. As stated above, an administrative remedy must be available for exhaustion to be required, so Defendants' waiver makes logical sense in the face of these allegations.

Removing the allegation of denial of access significantly changed the exhaustion analysis, and it is only fair to permit Defendants to reassert the exhaustion defense in light of the change in exhaustion-related allegations. Defendants' have not waived the affirmative defense of exhaustion of administrative remedies as to the claims in Plaintiff's operative complaints.

### C. Achievement of PLRA's Purpose

Plaintiff argues that the core purpose of the PLRA was satisfied through his many classification appeals because the prison officials were alerted to Plaintiff's problems. He further notes that Defendants treated the classification appeal as timely and responded on the merits of the classification appeal. However, these "merits" were not the merits of whether Plaintiff received adequate mental health care but rather were the merits of whether Plaintiff was properly placed in the right classification. *See* (Defs.' Ex. H, at 10, ECF No. 118-8). Even so, Plaintiff has not explained the significance of achieving the purpose of the PLRA where the administrative remedy has not been strictly complied with. As strict compliance is required, the question of whether prison officials were on notice is an irrelevant distraction.

### D. Statute of Limitations

Alternatively, Defendants argue that the claims from the -803 case should be dismissed because they were untimely filed. Plaintiff argues that the limitations issue has already been decided in the -803 case prior to the consolidation of that case with this -548 case. The relevant order was issued on August 8, 2019. Defendants, in turn, contend that the ruling in the -803 case no longer applies because Plaintiff filed an amended complaint that brings claims from 2015 and

the order only addressed claims from January 2016 through April 2016. Defendants also argue that the Court's ruling in the -803 case was contrary to Indiana precedent and asks the Court to alter the prior ruling.

The applicable statute of limitations requires plaintiffs to file lawsuits within two years of the date on which the injury occurred. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005); Ind. Code § 34-11-2-3. Plaintiff filed the -803 lawsuit on September 28, 2018, which is more than two years after April 20, 2016, the end of the date ranges for the claims in Plaintiffs' -803 complaint.

However, in June 2017, Plaintiff filed suit in the Southern District of Indiana, and that cause of action (*Thomas v. Lemmon*, 1:17-CV-1845) was essentially identical to the -803 case. On August 7, 2017, Plaintiff asked to "withdraw" his Southern District of Indiana case on the grounds that "I realize now that I have filed my complaint in the wrong district." *Thomas v. Lemmon*, No. 1:17-cv-1845 (S.D. Ind. Aug. 7, 2017) (ECF No. 8). The court granted the motion, construing it as a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a).

The Journey's Account Statute (JAS), found at Indiana Code § 34-11-8-1 allows, in certain circumstances, for a new action to be filed for three years after an initial action "fails." "Generally, when it applies, the Statute serves to resuscitate actions that have otherwise expired under a statute of limitations." *Al-Challah v. Barger Packaging*, 820 N.E.2d 670, 672 (Ind. Ct. App. 2005).

Previously, in the -803 case, the judge then assigned to the lawsuit determined that the JAS applied to Plaintiff's case in the Southern District of Indiana such that Plaintiff's claims in the -803 case did not violate the statute of limitations. However, "a voluntary dismissal of the earlier claim can preclude invocation of the JAS." *Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1244 (Ind. 2010). Specifically, an action has not "failed" for the purposes of the JAS where a plaintiff voluntarily

18

dismisses the action in order to refile it in a different court. *Ferdinand Furniture Co. v. Anderson*, 399 N.E.2d 799, 802-03 (Ind. Ct. App. 1980).

Therefore, as an alternative holding to the exhaustion issue decided above, the Court alters the prior ruling from the -803 case and finds that the JAS does not apply to Plaintiff's claims originating in the -803 case. Consequently, these claims were untimely filed and should be dismissed.

### E. *Respondeat Superior* Claim

Defendants assert that they should be granted summary judgment on all claims, but they do not provide specific argument on the matter on the *respondeat superior* claim. Still, "[r]*espondeat superior* liability does not apply to private corporations under § 1983." *Shields v. Ill. Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014). Additionally, in Indiana, "for respondeat superior liability to attach, there must also be underlying liability of the acting party." *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 109 (Ind. Ct. App. 2014). Thus, *respondeat superior* is not available to hold Corizon Health liable for its employees' § 1983 violations, and even if it did the employees are succeeding on summary judgment so there is no underlying liability.

Based on the above, the Court believes summary judgment in favor of Defendants to be appropriate on the *respondeat superior* claim. Pursuant to Federal Rule of Civil Procedure 56(f)(3), the Court provides notice of the same and will provide a time for responding to the matter.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendants' Joint Motion for Summary Judgment [DE 116]. All claims brought under 42 U.S.C. § 1983 are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

Pursuant to Federal Rule of Civil Procedure 56(f)(3), the Court **NOTIFIES** the parties that the Court intends to grant summary judgment on the claim of *respondeat superior* for the reasons stated in section E above and will do so unless a party files a response in opposition by **September 15, 2022**.

SO ORDERED on August 24, 2022.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
